Good morning, Mr. Campbell. Yes, good morning. May I please the court? My name is Alan Campbell. And with the court's permission, I'd like to reserve one minute for rebuttal. You may. It's my privilege to represent Alan Scoggins in this appeal challenging the denial of his petition for writ of habeas corpus. This case's route from Massachusetts to here has taken quite a while and is rather complicated. However, the single issue before this court is actually quite simple now. And the issue before this court is whether the state court's denial of the petitioner's Sixth Amendment claim was an unreasonable application of the Strickland Standard. Petitioner's position is that it was unreasonable to deny his, initially it was a motion for new trial, based on a claim of ineffective assistance of counsel for counsel's failure to interview and call certain witnesses. In doing so, they denied him, a petitioner, an attorney to assist him in bringing that motion for new trial. They denied him the assistance of an investigator in bringing that motion for new trial and then denied the motion for new trial because it was unsupported by anything other than his affidavit. But the only claim that you've got a certificate of appealability for before us is the ineffective assistance of counsel claim. It is, exactly. So why don't we stick to that? Well, in reviewing the reasonableness of their denial, you are allowed to look at the totality of the circumstances. The denial of the Sixth Amendment claim wasn't simply just a denial on the actual claim. There's also a denial of allowing him to not, sorry, actions that precluded him from supporting his motion. However, it's also simply not correct that there was no support other than his affidavit. At trial, I forget whether it was the first or second day, his attorney stated on the record that there was a witness, Vernon Campbell, that was an important defense witness that he hadn't spoken to. And it also, at one point during Holbrook's testimony, she was asked, so everything that you're telling us somebody else told you, petitioner didn't tell you that, correct? And she answers, correct. So at the time he's filed his motion for new trial, there's a statement of defense counsel that he hadn't spoken to an important witness, and there's a statement from a witness that she hadn't actually heard the defendant say anything. Now, as to the first, we've got a finding by the Massachusetts court that the decision not to interview the witnesses was a reasonable trial strategy in the circumstances of this case, right? No, I don't believe that is correct. The Massachusetts decision simply said that his claim was without merit. There is some language in the U.S. district court that the magistrate said it was a reasonable decision, but that was not part of the state court decision. Well, don't we need to presume that that's what the SJC so found? Well, in denying the Strickland, there are two prongs. It's unclear whether they say without merit, whether it was the first or the second prong. So I would not say that it's safe to say that they assumed they could have decided it under the prejudice. Well, take that one. With respect to Holbrook, how would he have been better off if he'd interviewed Holbrook beforehand? The way it went, her testimony came out, he cross-examined her. The district court here found that his cross-examination was skillful and successful or adequately challenged it. So would he have done a better cross-examination if he'd interviewed her? Well, it's entirely possible that the testimony would have never gone to the jury. But that's not our standard, entire possibility. Well, that's what on the prejudice strand is, had he known that she hadn't actually heard the defendant make statements, he could have done things to preclude her testimony from being heard going to the jury. By relying on cross-examination, you have Holbrook say, I heard the defendant say he was going to stick up the cab. She's cross-examined. Let's say it was a skillful cross-examination. What you're left with now is Holbrook said, somebody else said the defendant said he was going to stick up the cab. The jury still hears the defendant said he was going to stick up the cab. And that was, if not the only evidence of a robbery, it certainly was the strongest evidence of a robbery. And as you know, there was two grounds for conviction. One was felony murder. The other was deliberate premeditation. But the statement of he was going to stick up the cab, while it certainly goes to, obviously rather goes to the robbery, it likewise goes to the deliberate premeditation. In his statement, he admits that he was in the cab, that he had a gun, and that there was an argument, and he shot the cab driver. What does the record show Campbell would have said had he interviewed Campbell? Specifically, there isn't anything in the record as to what he would have said had he been interviewed, per se, whereas there's an affidavit from Holbrook saying this is what I would have said. So how could we find that the failure to interview Campbell caused any harm whatsoever? Well, we have on the record, Campbell was a Commonwealth witness. It's announced during the first trial they decided not to bring him, presumably because she changed his story. And I believe trial counsel says, I expect that he's going to say that what Holbrook is saying is a lie or something to that effect. So I think it's clear. And also from defendant's affidavit, he had told his trial attorney that what Holbrook said isn't a lie. These are the people that will contradict it. And so I think if you look at that, the record shows that Campbell would have said that Holbrook was lying. The record shows Campbell would have said that because defense counsel says that he thought Campbell would have said that? Well, you have defense counsel. I mean, usually we look at something that's evidence-based. Well, the defendant tried to get a hearing on this on at least two occasions, and it was not granted that opportunity. So to some extent, it's because the state wouldn't give him a full hearing on it. But the defendant is seeking habeas relief now. Nothing precluded you from getting an affidavit from Campbell? That is correct. But perhaps I'm misstating it. We don't have specific records saying, had I been interviewed, I would have said this. We have evidence, we have the defendant's affidavit that Campbell will indicate that Holbrook is lying. We have the defense attorney saying Campbell is an important witness. We have Commonwealth saying we think he's going to change his story and not be good for us, so we're not going to call him. If you look at those three things together, I believe you have enough to say that Campbell would have said that Holbrook is lying. You've got enough to show that Campbell might have said something very helpful to the defense. So let's assume that that's enough for the first branch of the Strickland analysis, that the counsel should have talked to him. Let's just assume that for a second. How does that get you, given the standard review that's applicable now, over the second prong of showing that had he got Campbell, it's so clear that Campbell would have helped him that it is therefore an unreasonable application of Strickland by the SJC? Well, again, I think it's a totality. If it was just Campbell, it may not happen. The real prejudice is from Holbrook. But then on Holbrook, if I'm understanding your argument, what you've got is that he decided not to interview her. Had he interviewed her, he might have preemptively cut her off the stand. Instead, she took the stand and he carved her up in front of the jury, making the government's case look like they're riding on a witness who's a liar. And how do we find that that is the case? Because even having carved her up, the defendant's statement, I'm going to stick, I went to the cab and I'm going to stick it up, it's the only place it appears in the record is from Holbrook. There's no reason. You can carve it up, but it's still there. It's a very simple thing. It may still be there, but the government doesn't have to show to maintain this verdict that this defense lawyer maintained the best trial strategy. It seems to me there are two reasonable ways that you could have approached this. You could have tried to preempt Holbrook from testifying, or you could have let the government go ahead and pulled the legs out from under her when she testified. He chose the second way. It didn't work. But how can we say, particularly in light of the SJC's refusal to entertain the ineffective assistance of counsel claim to fine for you, that under this deferential standard that that's an unreasonable trial strategy? If I could answer briefly. And I'm going to also see if Chief Judge Lynch has any questions. Again, as I indicated to Judge Kayeda, pulling the legs out from underneath really is not effective because the jury still hears the defendant told somebody he was going to stick up the cab. That is essentially the end of the case for him. Even with his statement, which admits being at the cab and admits having the gun, he still had a viable trial, perhaps for second degree, perhaps for a manslaughter. Once the juror hears he told somebody he was going to stick up the cab, that's the end of it. He has a criminal intent from the beginning. There's no reason to believe his statement. That, I believe, is the end of the game. And let me ask Chief Judge Lynch if she has any questions. Counsel, about ten days ago, the Supreme Court decided, White v. Woodall, on how federal courts are to approach this question of whether the SJC, the state high court's decision, is an unreasonable application. How do you think that impacts your case? To be completely honest, I'm not familiar with that case. If Your Honor could give me the name again, I can look it up and perhaps submit a letter after the argument. No. Thank you. I'm sorry. Thank you, Counsel. May it please the Court, my name is Annette Benedetto, and I represent the respondent in this action. I'm sure the Court is aware of the recent cases from the Supreme Court that makes it extremely difficult for a petitioner in an ineffective case really to overcome an appellate court decision. The standard, of course, is whether the SJC's decision that Mr. Scoggin's ineffective claim was meritless was an unreasonable application of Strickland. And under Strickland, under the two prongs, of course, performance and prejudice, I think the petitioner has utterly failed to meet its burden. Well, take the first prong. I mean, how in the world could a defense counsel in a murder case not bother to talk to any of the witnesses? The witnesses, let's start with Barbara Holbrook. First of all, she was a very hostile witness. Why not give her a call? Because that would, what would be the point, really? What you're doing is setting her up, giving a rehearsal to her about her testimony. Well, no, you're not at all. You call her up and you ask her, is she going to testify and what's she going to say? Maybe she tells you, maybe she doesn't. If she tells you, then you know. And you go to the judge and say, this is all hearsay. He had all that information beforehand without talking to Barbara Holbrook. She's the one that turned in her client, his client. She was feuding and had been beaten up by the petitioner's uncle. She was clearly not a witness that's going to contribute to his case. Well, then, even more so, if he knew she was coming in loaded for bear for him, how not call or at least talk to Campbell? Campbell was what even hurt his case even more. Vernon Campbell had given a statement supporting Barbara Holbrook, and then apparently just before trial the Commonwealth got indications that he would recant and decided wisely, I think, not to call him. Had the petitioner called him, that just puts a bigger spotlight on Holbrook's testimony. I mean, she literally heard him confess to, you know, trying to stick up a cab driver and ultimately killing him. So you have two witnesses that would be, had recounted and had heard the petitioner make these very inculpatory statements. So I think the strategy was appropriate. And, you know, as I'm sure this Court is so familiar with this case that just came down, actually, a lawyer's performance is constitutionally deficient only where given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it. I'm just quoting from the First Circuit, Pena v. Stickholz. Some other points. Barbara Holbrook had, of course, gone down to the police station at some point to complain about the petitioner's uncle and down there had indicated that she knew where Mr. Scoggins was. And it was during that particular time that this card game and the confession was revealed. She did at some point apply for Section 8 housing. And the victim witness had contacted North Carolina, excuse me, South Carolina to get a copy of the police report. So the petitioner's claim that there was some kind of deal was found not credible by not only the magistrate, but also by the motion for a new trial, Judge's second motion for a new trial, who found the affidavits of Barbara Holbrook and of the attorney, excuse me, of Barbara Holbrook basically was not credible. And that is presumptively a factual finding. Some of the other points, Your Honor, I think the record is clear that there were no threats by the police, that the choice of not to interview Barbara Holbrook was a strategic one, that it's not outside the realm of a reasonably competent attorney. So I would urge this court to affirm the decision of the district court judge, which denied the habeas corpus petition. Thank you. Let me ask Chief Judge Lynch if she has any questions. Thank you. And good morning again. Just a few quick points. In this case, we are not second-guessing. Our claim is actually based on facts known at the time. Prior to trial, the defense attorney had been told all of this information. This is not a claim that surfaces for the first time afterwards and the defendant said, oh, I should have known, or he should have known, or he should have asked me. The record is that a defense counsel was aware of this prior to trial. As Judge Cayetta mentions, speaking to a witness or having your investigator speak to a witness does not give them a preview of what your cross-examination is. You can ask them a lot of questions that you have no real concern with the answers for. It would be very difficult for a witness to ask 20 questions to pick out the one question that you're then going to focus on and change your statement or testimony. But let's say, because what I just heard from the government's counsel was your argument is the only, the real benefit of speaking to the witness would have been that you could have then moved preemptively to keep Holbrook off the stand so the jury would have never heard the hearsay. That would have required counsel to disclose to Holbrook and the government the hearsay argument before Holbrook took the stand and committed herself as to how and where she heard it. So wouldn't defense counsel have been running a risk that he would have educated Holbrook by the motion in limine, and all of a sudden he would have had a much worse case than the case that he actually ended up with? Not necessarily, Your Honor, because there would have been more than just Holbrook at a motion for limine. There could have been all of these other witnesses, the Pam Price, the Vernon Campbell, and I believe a Jermaine Campbell, who could have testified at a motion in limine and would not have necessarily had to be witnesses at trial. And she could have been, at some point she would have been cross-examined. And if she's cross-examined in the motion in limine and says the things that she said at trial, she could have then, at trial, that could have been used to impeach her. So those statements would have come out, whether she said them the first time in a motion in limine or the first time at trial, they would have made it to trial still. Thank you, counsel. Chief Judge Lynch, do you have any more questions? No, thank you. Thank you.